IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ANN R.,<br><br>                    Plaintiff,<br><br>          v.<br><br>KILOLO KIJAKAZI, Acting Commissioner<br>of the Social Security Administration,<br><br>                    Defendant. | **8:21CV29**<br><br><br>**MEMORANDUM<br>AND ORDER** |

This matter is before the Court on plaintiff Ann R.'s request for judicial review (Filing No. 22) of a final decision of defendant Kilolo Kijakazi, Acting Commissioner of the Social Security Administration ("Commissioner"), denying Ann R.'s claim for a period of disability and disability insurance benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq.*, and for supplemental security income ("SSI") under Title XVI of the Act.  Ann R. asks the Court to reverse and remand the Commissioner's decision "under sentence four of 42 U.S.C. § 405(g)."  The Commissioner filed a Motion for an Order Affirming the Commissioner's Decision (Filing No. 24), arguing the Administrative Law Judge ("ALJ") properly found Ann R. was not disabled under the Act.  For the reasons stated below, the Court affirms the Commissioner's denial of benefits.

## I.    BACKGROUND

Ann R. was born in 1960 and worked in various jobs throughout her life, such as a parts runner, home health aide, teacher's aide, and security guard.  She earned a GED and some additional certifications.  On August 14, 2018, Ann R. applied for disability benefits, alleging disability as of March 20, 2016.  She later amended the onset date of her alleged disability to July 31, 2018.  Ann R. applied for disability benefits due to memory issues, depression, anxiety, lower-back-degenerative-disk disease, neck pain, back spurs, leg pain, and a stroke.

At her hearing before the ALJ, Ann R. testified about her past work and alleged disabilities. Ann R. explained that she experiences depression and anxiety, which requires her to take medication and go to therapy, and has neck and back pain, which impacts her ability to lift objects over 15 pounds and sit or stand for long periods of time without pain.

For her medical conditions, Ann R. saw numerous medical providers after her disability onset date. Ann R. was already seeing Dr. Sarah Grauman ("Dr. Grauman") and Dr. Todd Eberle ("Dr. Eberle") for primary care. In July 2018, Ann R. saw Dr. Grauman for neck and back pain and anxiety, and Dr. Grauman diagnosed Ann R. with a moderate case of major depressive disorder and cervical neck pain with evidence of disc disease. Dr. Grauman prescribed her Lexapro for anxiety.

On October 11, 2018, Ann R. saw Dr. Eberle for primary care, and he diagnosed her with fibromyalgia and prescribed her medications. She also saw Dr. Eberle on March 27 and April 29 of 2019. Her April wellness check showed intact neurological functioning, tenderness in her extremities, and normal mood. At that time, Dr. Eberle switched Ann R.'s medications. Ann R. saw Dr. Eberle again in June 2019 because she was experiencing frequent heart racing and an upset stomach; she also reported depression and suicidal thoughts due to the death of her nephew. Dr. Eberle prescribed her Lorazepam and Zofran for her anxiety.

In August 2019, Ann R.'s mental health took a turn for the worse, and she was hospitalized for psychosis and suicidal thoughts between August 22 and 29. Ann R. began comprehensive treatment, which included medication and therapy. On September 26, Ann R. again saw Dr. Eberle, noting she was improving and doing well with her mental health.

Related to her August inpatient treatment, Ann R. had a follow-up appointment with Dr. Rashmi Ohja ("Dr. Ohja") on October 21, 2019. Dr. Ohja diagnosed Ann R. with schizophrenia. Ann R. continued to see Dr. Ohja for psychiatric treatment, which included

monthly medication injections.  Dr. Eberle continued to treat Ann R. for her neck and back pain.

Dr. Ohja and Dr. Eberle provided treating-physician opinions for Ann R.'s disability claim.  Dr. Ohja concluded Ann R.'s mental health would limit her to being off-task approximately 15% of the day and that she would miss approximately 2 days of work per month.  Dr. Eberle opined Ann R. may have some drowsiness from her anti-psychotic medications, that she could sit for more than 2 hours at one time, stand for more than 2 hours at one time, and could sit for about 4 hours in an 8-hour workday.  He also found she could occasionally lift 20 pounds and frequently lift 10 pounds or less.  Based on all those factors, Dr. Eberle concluded Ann R. was likely to be absent from work about 3 days per month.

In addition to her treating physicians, Ann R. also had examinations by non-treating physicians.  On September 28, 2018, Ann R. underwent a consultative psychological examination by licensed psychologist Linda Hunter, Psy.D ("Dr. Hunter").  Dr. Hunter concluded Ann R. had situational depression and anxiety but her overall mental health was good.  In February 2019, two state-agency medical consultants reviewed Ann R.'s medical records and found Ann R. had no severe mental determinable impairments and could perform light work.  Two other state-agency medical consultants reviewed Ann R.'s medical records in August 2019, confirming she could perform light work and did not have any severe mental determinable impairments.

The ALJ initially denied Ann R.'s disability claim, and after a hearing, again denied her claim.  The ALJ ultimately found Ann R. was not disabled under the Act based upon her treatment records, history of treatment, and prior administrative findings.  Ann R. appealed the ALJ's decision to the Appeals Council, and it denied review.  Therefore, the ALJ's decision is the final decision of the Commissioner.  *See Lott v. Colvin*, 772 F.3d 546, 548 (8th Cir. 2014).  Ann R. seeks review in this Court, arguing the ALJ erred in denying Ann R.'s claim because (1) "the ALJ did not articulate a sufficient explanation for finding"

her treating physicians' opinion unpersuasive, and (2) "by not fully and fairly developing the record" as to Ann R.'s mental and physical limitations and her work history.

## II.    DISCUSSION

### A.    Standard of Review

Upon reviewing a Commissioner's final decision, the Court does not weigh evidence presented to the ALJ and "will affirm if substantial evidence supports the ALJ's decision." *Pierce v. Kijakazi*, __ F.4th __, ___, 2022 WL 38473, at *2 (8th Cir. 2022); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). Substantial evidence is not a high bar; it means "less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision." *Schwandt v. Berryhill*, 926 F.3d 1004, 1008 (8th Cir. 2019). "So long as substantial evidence supports the ALJ's decision, [the Court] will not reverse even if substantial evidence would have supported a contrary decision or even if [the Court] would have decided the case differently." *Pierce*, 2022 WL 38473, at *2; *see also Fentress v. Berryhill*, 854 F.3d 1016, 1020 (8th Cir. 2017) (explaining that a court "will not reverse simply because some evidence supports a conclusion other than that reached by the Commissioner").

### B.    Eligibility for Disability Benefits

To be eligible for disability benefits under the Act, Ann R. must show she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). Ann R. is disabled under the Act only if her "physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

4

"A five-step process determines whether a claimant is disabled." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  In conducting that evaluation, the ALJ considers:

> 1) whether the claimant is currently employed; 2) whether the claimant is severely impaired; 3) whether the impairment is, or is comparable to, a listed impairment; 4) whether the claimant can perform past relevant work; and if not, 5) whether the claimant can perform any other kind of work.

*Lott*, 772 F.3d at 548 (quoting *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006)).  After carefully considering the entire record, the ALJ determined at step 1 that Ann R. has not engaged in substantial gainful activity since July 31, 2018.  At step 2, the ALJ noted Ann R. has severe impairments of "degenerative disc disease of the cervical spine and lumbar spine; status post cerebrovascular accidence (CVA); adjustment disorder, anxiety, and alcohol use disorder."  But at step 3, the ALJ determined that Ann R.'s impairments and combination of impairments do not equal the severity of the listed impairments in 20 C.F.R. §§ 414.1520(d), 404.1526, 416.920(d), 416.925, or 416.926.

Because the ALJ found Ann R.'s impairments were severe but did not meet or equal one of the listed impairments, the ALJ moved on to step four to evaluate Ann R.'s residual functional capacity ("RFC") to perform her past relevant work.  *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(5)(i), 416.920(a)(4)(iv), 416.945(a)(5)(i).  A claimant's RFC "is the most [she] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a).  In determining a claimant's RFC, the ALJ considers "all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of h[er] limitations." *Baldwin v. Barnhart*, 349 F.3d 549, 556 (8th Cir. 2003).

As to Ann R.'s physical limitations, the ALJ found she has the RFC to "perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except to occasionally climb, stoop, kneel, crouch and crawl."  As to Ann R.'s mental limitations, the ALJ

concluded Ann R. "would be unable to perform complex tasks, but could do detailed work that could be learned within 6 months."   At step 5, the ALJ concluded the Commissioner met its burden to show Ann R. can perform some of the jobs she previously held, including her work as a teacher's aide, in fire watch, and as a security guard.  Accordingly, the ALJ determined Ann R. was not disabled under the Act.

### C.      Issues on Review

Ann R. presents two issues for judicial review, arguing: (1) "the ALJ did not articulate a sufficient explanation for finding" her treating physicians' opinions unpersuasive, and (2) "by not fully and fairly developing the record" as to Ann R.'s mental and physical limitations and her work history.

### 1.      Medical Opinions of Dr. Ohja and Dr. Eberle

While Ann R. recognizes the ALJ does not need to give controlling weight to her treating physicians' opinions, *see* 20 C.F.R. §§ 404.1520c(a) and 416.920c(a), she argues an ALJ must still "explain why a medical opinion is discounted or disregarded" and must address each opinion's consistency and supportability.

For claims filed after March 27, 2017, an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. §§ 404.1520c(a), 416.920c(a); *see also Pemberton v. Saul*, 953 F.3d 514, 517 (8th Cir. 2020) (noting "the Social Security Administration has adopted new regulations about the weight afforded to treating physicians' opinions . . . [for] claims filed after March 27, 2017").   Under the new regulations, the ALJ must evaluate the persuasiveness of an opinion or finding by focusing on its supportability and consistency. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  An opinion or finding is more persuasive if it is well-supported by objective medical evidence and consistent "with the evidence from other medical sources and nonmedical sources in the claim." *Id*. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-2).   The ALJ may also consider other factors, such as the relationship between the medical provider and the claimant, the

6

medical provider's specialization, and any other factors that "tend to support or contradict a medical opinion or prior administrative finding." *Id*. §§ 404.1520c(c)(3)-(5), 416.920c(c)(3)-(5).

As Ann R. sees it, the ALJ did not "sufficiently articulate" why he discounted the opinions of her treating physicians.  As to both Dr. Ohja and Dr. Eberle, Ann R. argues that the ALJ did not "expressly evaluate whether the opinions were supported and consistent with the record."  Citing an unpublished Eighth Circuit opinion, Ann R. notes that failing to specifically address an opinion's supportability and consistency are legal errors that require remand.  *See Bonnett v. Kijakazi*, 859 F. App'x 19, 20 (8th Cir. 2021) (unpublished per curiam).  In *Bonnett*, the Eighth Circuit noted that "while the ALJ adequately evaluated the supportability of Dr. Thompson's opinion, she did not address whether his opinion was consistent with the other evidence of record, as required by the applicable regulation." *Id.*; *see also Mackling v. Saul*, No. 8:20CV347, 2021 WL 2982111, at *6 (D. Neb. July 15, 2021) ("[S]upportability and consistency are the most important factors and must be addressed by the ALJ in his or her decision. Thus, while the new rules do not dictate the weight the ALJ is to ascribe to any given medical opinion, the ALJ is required to explain why she finds a medical opinion to be persuasive or not.") (internal citation omitted).

The ALJ did address those factors in analyzing Ann R.'s case.  As to Dr. Ohja, the ALJ properly evaluated the supportability and consistency of her opinion.  When evaluating Ann R.'s mental limitations, the ALJ first analyzed the opinions of the state-agency medical consultants and the psychological consultative examiner, Dr. Hunter.  Those medical professionals agreed Ann R. had no severe mental impairments, and the ALJ found their opinions persuasive.  The ALJ noted their opinions are "supported by the observations of the claimant's therapist regarding her process and likely discharge from therapy services in June 2020" and was also "consistent with [Ann R.'s] own analyses, her own reports that she is doing better, and her ability to shop for groceries, manage her own finances, and care for her grandchildren and adult son with autism."  Dr. Hunter ultimately

7

concluded that Ann R.'s depression and anxiety did not "render her unable to obtain and sustain full-time employment."

Next, the ALJ analyzed Dr. Ohja's opinion but found her "opinions are not persuasive as they are not consistent with her previous observations of the claimant, particularly that she has not had any conflicts with her or any other medical staff." The ALJ contrasted Dr. Ohja's opinion as to Ann R.'s mental limitations with the others, stating, "[a]s detailed above, the medical evidence of record does not demonstrate consistent reports or observations suggesting difficulties of such a severity." The ALJ also explained that Dr. Ohja's opinion was not supported by Ann R.'s testimony, as Ann R. acknowledged at the hearing that she was still "able to handle the mental aspects of her prior (semi-skilled) work as a security guard" which "would seem to suggest abilities beyond those expressed in [Dr. Ohja's] medical source statement."

The ALJ also evaluated the supportability and consistency of Dr. Eberle's opinions as Ann R.'s general practitioner. The ALJ first noted she found the state agents physical examiners opinions persuasive because "they are supported by [Ann R.'s] relatively benign physical exams resulting in conservative treatment," the "results of her physical exams, and her ability to ambulate without any apparent issues noticed by her medical provider." The ALJ opined those results were consistent with Ann R.'s complaints of back and neck pain and testimony of activities that she is able to do in daily life. In contrast, the ALJ found Dr. Eberle's "opinion is not persuasive as it relie[d] on the reports of the claimant regarding her physical impairments, and the impact of her mental health symptoms, which were not documented as observed in her medical appointments with him." The ALJ also noted Dr. Eberle's opinion as to Ann R.'s alleged physical disability was not persuasive because Dr. Eberle thought Ann R.'s pain could be resolved with physical therapy.

After a careful review, the Court concludes the ALJ in this case considered all the medical evidence and properly evaluated the supportability and consistency of Dr. Ohja and Dr. Eberle's opinions as required by 20 C.F.R. §§ 404.1520c and 416.920c. *See also*

*Walker v. Commissioner*, 911 F.3d 550, 553 (8th Cir. 2018) (noting that good reasons for rejecting an opinion "include internal inconsistency or that other physicians' opinions have better evidentiary support"). The ALJ highlighted the inconsistencies he saw in Dr. Ohja's and Dr. Eberle's notes and other evidence, and substantial evidence supports the ALJ's decision. *See, e.g.*, *Kraus v. Saul*, 988 F.3d 1019, 1024 (8th Cir. 2021) (finding substantial evidence supported the ALJ's decision to give more weight to the consultant's opinion rather than the treating physician's opinion).

### 2.    Development of the Record

Ann R. also alleges that the ALJ erred by not fully and fairly developing the record concerning "some medical evidence" to support the ALJ's RFC determination. *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004) ("Well-settled precedent confirms that the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press his case.").

Here, the ALJ's RFC determination is amply supported by the evidence and a thorough record. Among her more general claims that the ALJ failed to fully develop the record as to her mental and physical limitations, which the Court addressed above, Ann R. specifically faults the ALJ for failing to subpoena treatment notes from Ann R.'s counselor. But an ALJ need not "seek additional clarifying statements from a treating physician unless a *crucial issue* is undeveloped." *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004). That was not the case here. The record in Ann R.'s case contains numerous medical treatment records, including both mental and physical examinations and notes from Ann R.'s treating physicians, consultative examiners, and state-agency medical consultants. The ALJ thoroughly examined those medical opinions as well as Ann R.'s disability application materials and heard her testimony. In reviewing the vast material, the ALJ created a sufficient record as to Ann R.'s mental and physical limitations. *See Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) ("[T]here is no requirement that an RFC finding be supported by a specific medical opinion.").

9

As to Ann R.'s claim the ALJ did not develop the record as to her fibromyalgia, she is also incorrect. The ALJ specifically addressed this issue, noting Ann R. met the criteria for fibromyalgia in October 2018, but she was not taking the medication and did not raise the concern to medical providers again. The ALJ therefore found "there have been no active signs of this impairment in the recent record." Ann R.'s cursory assertion that the ALJ did not make a sufficient record of her work history is also without merit.

The Court has reviewed the record and finds the ALJ resolved the necessary conflicts in the evidence, weighed the various medical opinions, and developed a sufficient record of his findings.

In light of the foregoing,

IT IS ORDERED.

1. Plaintiff Ann R.'s Motion for an Order Reversing the Commissioner's Decision (Filing No. 22) is denied.

2. Defendant Kilolo Kijakazi's Motion for an Order Affirming the Commissioner's Decision (Filing No. 24) is granted.

3. The Complaint (Filing No. 1) is dismissed.

4. A separate judgment will issue.

Dated this 10th day of February 2022.

BY THE COURT:

Robert F. Rossiter, Jr.
Chief United States District Judge